IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS A. RIVERA-MELÉNDEZ, et. al.,

Plaintiff,

v.

CIVIL NO.: 10-1012 (MEL)

PFIZER PHARMACEUTICAL, INC.,

Defendant.

**OPINION AND ORDER**

Pending before the court is plaintiff Luis Rivera-Meléndez's ("plaintiff" or "Rivera-Meléndez") motion for reconsideration of this court's opinion and order dated October 21, 2011 (Dkt. No. 122) granting in part and denying in part defendant's motion for summary judgment. (Dkt. No. 128.) Plaintiff moves for reconsideration, under Federal Rules of Civil Procedure 59 and 60, of the dismissal of three of his claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335. The court briefly addresses plaintiff's contentions and incorporates by reference the reasoning contained in the October 21, 2011 opinion and order.[1]

Plaintiff first challenges the court's dismissal of his claim under USERRA's reemployment provision, 38 U.S.C. § 4312, arguing that defendant Pfizer Pharmaceuticals, LLC ("defendant" or "Pfizer") should have reinstated him to a higher position than he held prior to his service (Dkt. No. 128, p. 4.) To address plaintiff's claim, a brief recapitulation of the relevant facts will be useful.

---

[1] One of the claims plaintiff raised in his motion to consideration, regarding defendant's denial of his $100 Christmas bonus in 2009, has already been resolved by the parties by means of a partial settlement agreement. Therefore, as to the 2009 Christmas bonus, the motion for reconsideration is moot.

While plaintiff was on active duty, Pfizer eliminated his position, API Group Leader, and replaced it with two different positions: API Team Leader and API Service Coordinator. (Dkt. No. 122, p. 4.) The API Team Leader position had more supervisory responsibilities than the API Group Leader or Service Coordinator positions. (Dkt. No. 122, p. 18). The API Service Coordinator position had fewer responsibilities than that API Group Leader position but the same salary, and it did not have the supervisory responsibilities of the API Team Leader position.[2] (Dkt. No. 122, p. 5.) To fill the new positions, Pfizer placed a job posting open to all Pfizer employees. (Dkt. No. 122, p. 4). No employees were automatically promoted to the API Team Leader position, but were selected based on experience and qualifications. (Dkt. No. 122, p. 4.) Pfizer posted seven API Team Leader positions in March 2009, which were all filled by the time plaintiff returned from active duty in October 2009. (Dkt. No. 122, p. 4.) Upon plaintiff's return, he was placed in the position of API Service Coordinator after a brief transition period. (Dkt. No. 122, p. 5-6).

Plaintiff argues correctly that 38 U.S.C. § 4312 requires an employer to place a returning service member in the "escalator position," which is the one he "would have occupied had he kept his position continuously during the war," Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284-85 (1946), and that "the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service." 20 C.F.R. § 1002.191. The principle behind this rule is that "if not for the period of service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events." Id.

---

[2] Plaintiff implies that the API Team Leader position received a higher salary than the Service Coordinator position by asking for lost wages in his complaint. (Dkt. No. 58, ¶ 57(a)). No evidence in the record pertaining to the API Team Leader salary has been specifically referenced by plaintiff.

2

Plaintiff was not entitled to be reinstated as an API Team Leader because it was a position for which employees were selected based on managerial discretion and thus not an escalator position, which is an automatic promotion based on employee seniority. (Dkt. No. 122, p. 17.) Pointing to the Department of Labor's commentary on the above-cited regulation, 20 C.F.R. § 1002.191, plaintiff argues that the reasonable certainty test should apply to both discretionary and nondiscretionary promotions and thus the court should have determined that it was "reasonably certain" that he would have obtained the API Team Leader position had he applied for it. (Dkt. No. 128, p. 6-8.) (citing 70 Fed. Reg. 75271 (Dec. 19, 2005). The commentary merely emphasizes, however, that the final rule is designed to avoid relying on whether or not the employer has labeled the position as "discretionary." 70 Fed. Reg. 75271 (Dec. 19, 2005) ("The final rule promotes the application of a case-by-case analysis rather than a rule that could result in the unwarranted denial of promotions to returning service members based on how the promotion was labeled rather than whether it was 'reasonably certain.'")

Plaintiff has not cited any evidence showing that the API Team Leader position was merely labeled discretionary, but was in fact a "reasonably certain" and relatively automatic progression from the API Group Leader position. First, the record shows that any Pfizer employee could solicit an API Team Leader position, and all of them had to go through an application process and be interviewed. (Dkt. Nos. 108-1, ¶ 29; 115-1, ¶ 29.) Second, the only evidence that plaintiff presented in support of his "reasonable certainty claim" was that one other former group leader who had similar education, experience, and employment history with Pfizer did obtain the Team Leader position. (Dkt. No. 122, p. 8.) Without any information about the other six employees who were selected for the position or the particulars as to how or why the other former group leader was

selected, this does not show that the former API Group Leaders were automatically promoted to API Team Leader. The record does show that two former Group Leaders were in fact demoted to the position of API Senior Operator and two others (in addition to plaintiff) were appointed to the API Service Coordinator position. (Dkt. Nos. 108-1, ¶ 36, 37; 115-1, ¶ 36, 37.) Therefore, there is no evidence from which a jury could determine that the selection of the API Team Leaders was truly an automatic promotion artificially labeled as discretionary.

Plaintiff also requests reconsideration of his hostile work environment claim, contending that the court overlooked certain citations to the record and erroneously weighed the credibility of his evidence. (Dkt. No. 128, p. 13.) First, plaintiff argues that the court should have considered his 2009 employee evaluation despite it being in Spanish without a translation because he also submitted deposition testimony from his supervisor about the evaluation. (Dkt. No. 128, p. 13.) The court is not required to evaluate documents that are not in English. The previous opinion and order, however, did note that even though it was untranslated, the evaluation said that plaintiff "met expectations, which is not harassing behavior. (Dkt. No. 122, p. 15, n.13.) ("[T]he evaluation observes that Rivera was on military leave for most of 2009 and as such, 'his presence in the plant was minimal; however, it is understood that he met the expectations of the position that he occupied.'") Additionally, the deposition testimony from plaintiff's supervisor, Jorge Belgodere ("Belgodere") indicated that plaintiff received a 3.6 rating for "initiative" in his 2008 evaluation and a 3.0 in his 2009 evaluation, the year that he was on military leave. (Dkt. No. 115-4, p. 198-99.) Belgodere explained that a score of 3.6 meant that the employee "exceeds . . . in that competency," (Dkt. No. 115-4, p. 198, l. 12-14) and that a 3.0 means that "the person demonstrates the ability to initiate, ah the tasks that result in a solution of problems and the capacity to reach results; as well as

4

to respond promptly to the needs of the areas and his, her coworkers." (Dkt. No. 115-4, p. 199, l. 16-19.) The deposition testimony does not indicate that a 3.0 is a negative rating and, while it is lower than a 3.6, the .6 point drop in plaintiff's initiative score, without any evidence of a discriminatory motive, is not evidence of a hostile work environment.

Next, plaintiff contends that the court failed to credit his perception of discriminatory animus by Camilo Padín ("Padín"), a human resources employee at Pfizer (Dkt. No. 128, p. 13-14), and incorrectly applied First Circuit precedent holding that summary judgment is not appropriate when plaintiff "provide[s] deposition testimony presenting specific instances of anti-military remarks, as well as complaints and pressure from his superiors [because] it is for the jury, not judge, to determine credibility." Velázquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 17-18 (1st Cir. 2007). The October 21, 2011 opinion and order did in fact credit plaintiff's testimony as true, yet found that it was not objective evidence of harassing conduct. (Dkt. No. 122, p. 16.) The deposition testimony that plaintiff references recounts a conversation with Padín which does not indicate the topic of the conversation or whether it had to do with his military leave or military status:

> When I started talking, he started to interrupt me. And I stopped him and I asked him to please listen to me because I had listened to both of them and I wanted them to listen to me first and that once I finished for them to ask me whatever they wanted. He made face as if he were upset and I felt intimidated. If I were to apply for a new position and it went through Camilo Padín's hands, I felt that I wasn't going to receive fair treatment even if I had the qualifications."

(Dkt. No. 115-3, p. 204, l. 1-12.) As noted previously, this testimony only establishes that plaintiff perceived that Padín treated him unfairly, but provides no objective evidence from which a jury could infer that Padín actually did so. (Dkt. No. 122, p. 16.) A hostile work environment claim must be based on evidence of objectively offensive conduct. Vega-Colon v. Wyeth Pharmaceuticals, 625

F.3d 22, 32 (1st Cir. 2010). "[A]n objective standard 'cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held.'" Feliciano-Hill v. Principi, 439 F.3d 18, 27 (1st Cir. 2006) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002). Plaintiff's evidence, taken as true, and viewed in the light most favorable to him, does not provide any basis from which a rational jury could conclude that he was subjected to a hostile work environment.

In view of the foregoing, plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of November, 2011.

s/Marcos E. López  
U.S. Magistrate Judge